**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nick Coons, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Timothy Geithner, et al.,<br><br>    Defendants. | No. CV-10-1714-PHX-GMS<br><br>**ORDER** |

  Pending before the Court are portions of Defendants' Motion to Dismiss (Doc. 42), Motion for Summary Judgment (Doc. 65)[1], and Plaintiffs' Motion to Treat Defendants' Motion to Dismiss as a Motion for Summary Judgment in Part (Doc. 48). For the reasons stated below, Plaintiffs' remaining Counts IV, V, and VIII are dismissed.

## BACKGROUND

  Plaintiffs challenge the constitutionality of the Patient Protection and Affordable Care Act of 2010 ("PPACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) ("HCERA"). Plaintiffs are Nick Coons and two members of the United States House of Representatives, Jeff Flake and Trent Franks. (Doc. 35).

  On August 31, 2012, this Court dismissed Counts I, II, III, VI, and VII in light of the Supreme Court's opinion in *Nat'l Fed'n of Indep. Bus. v. Sebelius,* 132 S. Ct. 2566

---

[1] The Court directed the parties to file supplemental briefing on Counts IV, V, and VIII in its previous Order. (Doc. 84.) The Supplemental Briefs were filed consecutively. (Docs. 85-86.)

(2012), and ordered supplemental briefing on whether the PPACA (IV) violates the Fifth and Ninth Amendments by restricting Plaintiff Coons' medical autonomy, (Doc. 35 ¶¶78-85), (V) violates the Fourth, Fifth and Ninth Amendments by violating Plaintiffs' privacy, (*id.* ¶¶ 86–91), and (VIII) pre-empts Arizona state health care legislation, (*id.* ¶¶ 127–134).

## DISCUSSION

### I. LEGAL STANDARD

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno*, 482 U.S. 739, 745 (1987). "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council*, 485 U.S. 568, 575 (1988). A facial challenge must fail "where the statute has a plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotations omitted).

### II. ANALYSIS

#### A. Pre-emption

Plaintiff's Count VIII alleges that Arizona's Health Care Freedom Act ("HCFA") prohibits the operation of the PPACA in Arizona, and that the HCFA is not pre-empted by the PPACA. State laws are preempted when they directly conflict with federal law. *Id.* (citing *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000)). This includes cases where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143 (1963), and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941); *see also Crosby,* 530 U.S. at 373 ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal

statute as a whole and identifying its purpose and intended effects.").

"The purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal citations omitted). However, courts should assume that "the historic police powers of the States" are not superseded "unless that was the clear and manifest purpose of Congress." *Arizona*, 132 S. Ct. at 2501 (citing *Wyeth*, 555 U.S. at 565).

The PPACA conflicts with Arizona's HCFA as embodied in the Arizona Constitution. *See* Ariz. Rev. Stat. ("A.R.S.") 36-1301; Ariz. Const. XXVII, § 2. The federally-enacted PPACA includes a requirement to maintain minimum essential health insurance coverage. 26 U.S.C. § 5000A(a). Beginning in 2014, if a taxpayer fails to meet that requirement and is not exempt, a tax is imposed under the statute. *See id.* § 5000A(f)(1), (c). The Supreme Court has held that this "penalty" is in fact imposed "under the taxing power, and that § 5000A need not be read to do more than impose a tax." *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2598. The purpose of the taxing provision, as described by Congress, is to "add millions of new consumers to the health insurance market . . . and . . . increase the number and share of Americans who are insured." 42 U.S.C. § 18091(C). Congress wanted to achieve "near-universal coverage" and "to induce the purchase of health insurance" so that individuals do not wait to do so until they need care. *Id.* at § 18091(D), (I); *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2574.

By contrast, the HCFA prohibits laws that levy taxes when an individual pays for health care without using a public or private third party. Ariz. Const. XXVII, § 2(A)(1), (D)(5). The purpose of the HCFA is to "preserve the freedom of Arizonans to provide for their health care." Ariz. Const. XXVII, § 2(A). The HCFA provides that "[a] law or rule shall not compel, directly or indirectly, any person, employer or health care provider to participate in any health care system." *Id.* § 2(A)(1). The term "compel" is defined as including the usage of "penalties or fines." *Id.* § 2(D)(1). Furthermore, "[a] person or employer may pay directly for lawful health care services and shall not be required to pay penalties or fines for paying directly for lawful health care services." *Id.* § 2(A)(2).

1  "Penalties or fines" are defined in the HCFA as including any government taxes. *Id.* at § 2(D)(5).  To permit the HCFA to operate would frustrate the purpose of the PPACA by allowing Arizona, and virtually all states, to exempt their citizens from its tax penalties, thus frustrating Congress's intent to encourage the purchase of minimal health insurance.  Therefore the two laws are in direct conflict and Arizona's constitutional provision is pre-empted.  Plaintiffs argue that the PPACA provision guaranteeing the freedom not to participate in a Federal health insurance program, 42 U.S.C. § 18115, evinces a Congressional intent not to preempt the HCFA. (Doc. 85 at 3.) However the plain text of the PPACA provision cited by Plaintiffs merely purports to preserve the right of an individual to decline to participate in any Federal health insurance program; it does not prohibit the government from imposing a cost on individuals for doing so.  It is true that the PPACA does not "compel" taxpayers to buy insurance: the "shared responsibility payment" is not so high that there is really no choice but to buy health insurance. *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2574. However the price of making that choice is to pay a tax.

Plaintiffs further argue that enforcing the tax penalty would "supersede Arizona's authority to shield individual liberty from federal power thwarting the very aim of American federalism." (*Id.* at 6.) Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect. *Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012) (citing *Gregory v. Ashcroft,* 501 U.S. 452, 457 (1991)). However, it is a "familiar and well-established principle" that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," legitimate federal law. *Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 712 (1985) (internal citations omitted).  In light of the Supreme Court's decision in *Nat'l Fed'n of Indep. Bus.* explicitly endorsing Congress's use of the taxing power in passing the PPACA however, this Court cannot conclude that the Congress's use of that power in passing the PPACA is illegitimate under our constitutional system.

### B. Substantive Due Process

#### 1. Right to Medical Autonomy

Plaintiffs argue that the PPACA's tax penalty provision "reduces the health care treatments and doctor-patient relationships [Plaintiff Coons] can afford to choose, thereby unduly burdening his right to medical autonomy." (Doc. 85 at 6.) In defining the right to "medical autonomy," Plaintiffs refer to cases that "bar[ ] the government from compelling individuals to undergo medical procedures," *see Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261 (1990), and that prevent the government "from interfering with an individual's choice to obtain care," *see Roe v. Wade*, 410 U.S. 113; *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Eisenstadt v. Baird*, 405 U.S. 438. (Doc. 51 at 37.)

The Supreme Court has observed that the Due Process Clause specially protects those fundamental rights which are, objectively, "deeply rooted in this Nation's history and tradition", and are such that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted). Moreover, the Court has required in substantive due process cases a "careful description" of the asserted fundamental liberty interest. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993) and *Cruzan,* 497 U.S. at 277-278). Plaintiffs have asserted a right to "medical autonomy" derived from a line of cases protecting the right to an abortion, to contraception and to refuse lifesaving treatment. (Doc. 51 at 37.) However, there is no recognized substantive due process right to "choose[ ] which doctors an individual sees." (*Id.* at 36-37.) Although there is constitutional protection for "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education" that does not mean that "any and all important, intimate, and personal decisions are so protected." *Glucksberg*, 521 U.S. at 726-28 (citing *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 834 (1992)). Plaintiffs have not adequately asserted a substantive due process right to choose medical providers and treatment.

#### 2. Right to Informational Privacy

Plaintiff Coons alleges that he has "a constitutionally-protected privacy right not

to be compelled to disclose his personal medical records and other sensitive information." (Doc 85 at 7.) He contends that the PPACA's tax provision unduly burdens that right by forcing him to either share such information with the Government and insurance companies or pay the tax penalty. *Id.* However, this claim fails both for a lack of ripeness and because, at least at the rate the penalty is now set, Coons retains the option to not submit information to third parties by paying the tax penalty.

There is a constitutionally-protected privacy interest "in avoiding disclosure of personal matters." *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (citing *Whalen*, 429 U.S. at 599–600). That interest "encompasses medical information and its confidentiality." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) (internal citations omitted). However, "the right to informational privacy is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002) (citing *In re Crawford,* 194 F.3d at 959). The Supreme Court has distinguished cases limiting government power to regulate "marriage, procreation, contraception, family relationships, and child rearing and education," from cases involving the right to informational privacy. *Whalen,* 429 U.S. at 600. Accordingly, the compelled disclosure of medical information does not always "pose a sufficiently grievous threat" to patients' interest in keeping it private "to establish a constitutional violation." *Id.* at 600-602 (stating that disclosure to state employees is one of the "unpleasant invasions of privacy that are associated with many facets of health care," such as those "disclosures . . . to insurance companies and to public health agencies.").

Plaintiffs' claim that the PPACA violates their right to informational privacy is unripe. (Doc. 86 at 3-4.) Ripeness depends on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). Plaintiffs' claim is unripe insofar as

1 they argue that they will be forced to disclose confidential medical information to third
2 parties. The tax penalty has not yet gone into effect and Plaintiffs have not alleged a
3 specific disclosure requested by an insurance company. *See* 26 U.S.C. § 5000A(a). For
4 example, Plaintiffs allege that companies may request "pre-existing medical conditions
5 information" but they do not allege that it has in fact been requested from them. (Doc 51
6 at 40.) This court is not able to examine such things as "the type of record requested, the
7 information it does or might contain, the potential for harm in any subsequent
8 nonconsensual disclosure, . . . [and] the adequacy of safeguards to prevent unauthorized
9 disclosure." *Crawford*, 194 F.3d at 959.

10 Defendants argue that "[b]ecause [P]laintiffs' medical information is 'shielded by
11 statute from unwarranted disclosure' . . . [P]laintiffs have no due process claim." (Doc.
12 86 at 5 (citing *NASA v. Nelson*, 131 S. Ct. 746, 762 (2011).) Defendants point to the
13 Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. §
14 164.502, and the PPACA, 42 U.S.C. § 18081(g)(1), as strictly limiting the manner in
15 which insurance companies and the Government may use or disclose individuals'
16 medical information. This Court can only assess the adequacy of privacy protections
17 under the PPACA and the HIPAA if applied to a disclosure request made by a third party
18 to Coons. His claim is unripe.

19 Coons may be arguing that the PPACA violates his constitutional rights because it
20 requires him to disclose personal information to third parties *at all* or to pay the tax
21 penalty. (Doc 51 at 38-39.) The PPACA would require an applicant for insurance
22 coverage to provide information necessary to "authenticate identity [and] determine
23 eligibility." 42 U.S.C. § 18081(g)(1). Coons would need to provide some basic
24 information to an insurance company or to the Government in order to obtain "minimum
25 essential coverage." *See* 26 U.S.C. § 5000A(f). However, the Government is not "forcing
26 him to disclose medical information to third parties when he would otherwise keep such
27 information private." (Doc. 51 at 39.) Coons has the lawful option of paying the tax
28 penalty rather than obtaining health insurance and submitting personal information to

third parties. 26 U.S.C. § 5000A(b)(1); *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2597. Even assuming that Coons has a constitutional right to informational privacy not to disclose personal information to insurance companies, the fact that the PPACA may make it "more difficult" to exercise that right does not invalidate the Act. *Casey,* 505 U.S. at 874. Although the PPACA may induce Coons to submit an insurance application or claims to third parties, he still has the option not to do so. Therefore, the PPACA does not violate Plaintiffs' right to informational privacy no matter the extent of the disclosures requested by those third parties.

## CONCLUSION

The PPACA does not violate Plaintiff Coons' substantive due process rights because the Act provides him with the option to directly pay for health care services by paying the tax penalty. Moreover, the PPACA's individual mandate and tax provision pre-empt the HCFA and the Arizona Constitution. Accordingly, Counts IV, V, and VIII are **dismissed**.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 42) and Motion for Summary Judgment (Doc. 65) as to Counts IV, V, and VIII are **granted.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Treat Defendants' Motion to Dismiss as a Motion for Summary Judgment in Part (Doc. 48) is **denied as moot**. The Clerk of Court is directed to terminate this action.

Dated this 19th day of December, 2012.

G. Murray Snow
United States District Judge